States v. Robey. Mr. Cipolla. May it please the court. Richard Cipolla with colleague Kelly Mennemeyer on behalf of appellant George Robey. We appear before this court under a 7-11 license with Northwestern's Bloom Legal Clinic. This court should reverse the district court for two reasons. First, Robey was not brought to trial within 70 days as required by the Speedy Trial Act. And second, the dismissal of 19 out of 25 counts on the eve of trial constitute an impermissible amendment in violation of Robey's Fifth Amendment rights. In the alternative, this court should remand for because of the erroneous relevant conduct determination made by the district court. Although these are three separate issues, they're all held together by being the result of impermissible shortcuts that were allowed at the district court. Turn to the first argument with the Speedy Trial. The Speedy Trial requires the defendant to be brought to trial within 70 days after indictment. However, there are exceptions to this that allow some periods time to go longer, including the end of justice provision at issue in this case largely. These exceptions require the judge to make findings. I'm sure the judge didn't make findings. We also have to deal with the doctrine of invited error. These were motions by the defense, and it seems very strange for the defense to say the judge erred, and the case should be remanded or the prosecution dismissed because I sold the judge this bill of goods. Ha ha ha. We understand that concern, Your Honor, but we think this case is a little more unique compared to some of those other cases. A lot of the cases before this the defendant himself agreed to it, such as in Wasson. The Speedy Trial Act specifically and textually states... I understand the judge has to make particular findings. That's why I'm talking not about whether there was error, but I'm talking about the doctrine of invited error. When a litigant induces a judge or leads a judge or permits a judge to make an error, generally that litigant can't take advantage of the error, even on the side of the defendant. Your Honor, the Speedy Trial Act makes clear that if the strictures aren't followed, there is a remedy. And in Zedner itself, it said, even though the defendant there requested the continuance to make some factual determinations for its defense, decided that they could later challenge the lack of findings. Let me be sure that I'm... Since you're not addressing the doctrine of invited error, am I understanding you correctly to say we should just ignore that doctrine? There's something about the Speedy Trial Act that knocks out the doctrine of invited error. Your Honor, I'm not as familiar with the invited error doctrine specifically, and I can file some mental briefing on that if you prefer. We think in this case, however, that because there were no status hearings and because Robey himself complained about these delays, this is not a specific case where Robey and his defense counsel were in alignment. Robey specifically on the same day defense counsel requested continuance, the district court received a letter from Robey saying, you know, there are too many delays in this case. The defense counsel isn't preparing correctly. Well, there's a difficulty with that argument too, because Mr. Robey went through three attorneys, and many of these continuances were granted for purposes of the changes of counsel and the need for new counsel to get up to speed on the case. And so he can't simultaneously fire his attorneys or make life so difficult for them that they have to agree to his request that they withdraw, and then demand strict adherence to speedy trial rules to the detriment of his new counsel's getting up to speed on the case. I mean, those two things can't coexist. Your Honor, you know, there are some periods which we don't contest because they're right after counsel was appointed. And even if some other periods maybe bleed into that, we only need 20 days. The government's conceded 50 days have passed, and we think that there are periods where counsel has been on the trial, on the case, for over a year, such as Record 93, page 16 of the appendix. We think that at that point, the counsel who's been there for many months Which one of the continuances was that? That was the There's 11 of them. So which one was that? That was the eighth continuance, Your Honor. We think the eighth and ninth continuances are good examples where nothing happened between continuance of 7 and 8, except for scheduling orders. Continuance 7 was requested, then continuance 8. It's unclear what was going on, and we know because of the letter that we received that the same day the order for continuance 8 was entered, that he was upset with the pace of trial. But there's no inquiry going on at this stage. Well, they're also – the parties are waiting for psychological evaluations. No, Your Honor. As for continuance 7, as the basis of continuance 7, which was the previous one, Tony Belchote already told the court that we've received the results. So, and this is part of the problem in the case where the court isn't making findings. It's using the psych evaluation, even though the results had been received months beforehand, as a validation, even though what counsel is asking for is, you know, time to deal with another matter at approximately the same time. We don't know what that matter is, and we don't have a record, so we can't even make these determinations on appeal on, you know, what the underlying merits are. Turning to our second argument, we believe that the district court relied upon improper factors for its relevant conduct determination by including 10 uncharged vehicles. This affected the total damages value that Roe v. Face, and we believe that we can show two vehicles were irrelevant that would knock out below the $400,000 threshold, and it would require a me-man for resentencing. And the court made this error by clearly misstating the law. It applied a same source of evidence test, which has no basis in the sentencing guidelines, and has absolutely no basis in any cases. Instead, it ignored important factors that do exist, such as temporal factors and the gaps between the uncharged conduct and the charged conduct, and even multiple gaps within the uncharged conduct. Many of these cars are over a year old compared to the charged conduct, and aren't the, and the court never responded to how these gaps are outweighed by relevant factors for relevant conduct, and instead just said, source of the evidence is controlling, and cut off the government's proffer. And, and by using that shortcut, it didn't make specific findings in each instance for each car, and just relied on that. Lastly, a brief point on the permissible amendment that was allowed by the district court. On the, on the eve of scheduled trial, the government, Groby was facing a conspiracy case, a rather large one, which began with count one, which is seven pages out of the 14 pages of the indictment, and constitute over 10 paragraphs. Then a week before trial, the government invoked a scrivener's exception, which is one of the few times you can amend an indictment without going back to the grand jury, and dismissed 19 out of 25 counts. On appeal, it doesn't defend this as a, doesn't defend this as scrivener's error, it just says it has this right, as of right. However, we would hold that a posted rule against broadening an indictment doesn't mean there's a posted rule for narrowing the indictment. And many of this court's cases has asked other questions, not about does it broaden, but does it change the basic theory, does it surprise? If there are no further questions, I'd like to reserve the remainder of our time for rebuttal. Certainly, counsel. Mr. Linder. Thank you, your honor. Good morning. Nick Linder on behalf of the plaintiff, FLE, the United States of America. May it please the court. Your honor, first and foremost, there's a few matters in the record that need clarification, both to refine the issues and give the district court credit for what it did here, three of them in particular. First, the government did not seek to dismiss counts from the indictment as mere scrivener's errors, as the appellant suggests. Rather, when the government moved to dismiss certain counts, we also sought to renumber the remaining counts and the remaining paragraphs to make them sequential, so as not to hint to the jury that Mr. Roby was charged with more crimes. We did not dismiss counts 7 through 25 sequentially. We dismissed certain counts, and if left there, it would have led the jury to potentially think that Mr. Roby was charged with more. And that need for document 38, that's the scrivener's error, the renumbering, and that's what we sought to correct. Second, Mr. Roby did not raise an objection to any of the ten continuances that his attorneys requested. He filed a number of pro se letters throughout the case, and in nearly all of them, he expressed disagreement with his lawyer's strategy or disapproval with their preparation. To the extent he commented about timing at all, it was directed at his lawyer's preparation, not about any continuances. And finally, Mr. Roby did have hearings. On appeal, Mr. Roby argues that... Counsel, our time is limited. I'd like to focus you, if I can, on the sentence in this case. Yes, Your Honor. The district judge counted as part of relevant conduct ten cars that were outside the counts of conviction. Correct, Your Honor. And they're, under the guidelines, they're relevant conduct if they're part of the same scheme or plan. That's correct, Your Honor. Where did the district court find that they're part of the same scheme or plan? With respect to the evidence produced at trial about how the charged conduct and the convicted conduct was perpetrated, and the comments, testimony at trial to Judge Heard, and primarily the modus operandi of the defendant, the way he conducted... I'm not asking how you might seek to prove that they were part of the same scheme or plan. I'm asking where the district court found that they were part of the same scheme or plan. The district court found that the common scheme among all 14 vehicles was present on evidence in Mr. Roby's home, primarily. Where do I go to find that? Because I must say I looked for that finding and couldn't find it. And your brief doesn't point the court to it, because your brief argues only that the evidence convincingly shows that he did it, which is not the legally relevant question. So where should I go? I've obviously missed it. You say it's there. Where will I find it? At the sentencing hearing. You know, at the sentencing hearing is not a place to go look. It doesn't help me. Your Honor, the judge heard and at trial saw the evidence that put all 14 vehicles in Mr. Roby's home. Evidence... Look, that's just a different question. It's the question your brief addresses, which is, did he do it? But it's not the question posed by the guidelines. I looked and didn't see the finding. I asked my attorneys, they didn't see the finding. And now I'm asking you, and you can't point me to the finding. Your Honor, at sentencing, the judge found that Mr. Roby exhibited a pattern of conduct that the evidence found at his home established. So you're just saying, go reread it. You obviously read it wrong Your Honor, at sentencing... There is a transcript in the record, right? There is, Your Honor. Your Honor, at sentencing, in the third volume of the trial transcript, at page 19, lines one through five, I'm sorry, five through nine, the court, after hearing the government's profference to the evidence, instead asked the government to cut to the chase and explain specifically why all 14 vehicles were part of the same common scheme or plan. The government did, describing the typewriter ribbon and the other types of evidence that were found at the home that link Mr. Roby's conduct that he was convicted for to all the other cars. And it was at that point that the court found a pattern of conduct. What did the court say? The court said that she found a pattern of conduct among all four, that was the court's phrase, a pattern of conduct based on the record at trial and the record of sentencing that established that all four... Can you give me the citation to what you're now reading from or identifying so I can go look at it? It's on page 20 of the sentencing transcript, lines two to seven, and the court concludes, I quote, the evidence describes the same sort of pattern that was at issue before the jury in the trial and revealed that pattern of relevant conduct that far exceeded... No, that's a finding that the conduct, that's not the finding that guidelines require. With respect, your honor, the guidelines... We have reversed district judges for confusing modus operandi with the thing to which the relevant conduct guidelines refer. Which is the other stolen vehicles in this case, the ten other vehicles, and the that's what we have to go on, that's what we've got to go on. The record is what it is. That's correct, your honor. Your honor, if the court has, does the court have any further questions about any of the other issues in the case? If not, I'll take my  Mm-hmm. Ms. Miniman. May it please the court, I'd like to turn first to sentencing and note that you are right, that there was no mention at sentencing of certain vehicles. In fact, there was nothing about the silver Camaro that came up at sentencing. The black Camaro wasn't even mentioned at all. The court didn't ask the government what the common scheme between all of the vehicles brought in at sentencing was. They simply asked about the source and were taking impermissible shortcuts in doing so. I'd also like to turn to the argument about the amendment. Note that the government is misrepresenting what actually happened when it moved to amend the indictment. They suggested today, they brought up a new argument that was not raised in their brief, trying to explain away their use of scriveners when they decided to dismiss whole counts from the indictment. In fact, that's the use of scriveners error. I must say, counsel, I don't see how this indictment was amended. Counts of the indictment were dismissed. Are you saying that every time a prosecutor dismisses counts of an indictment, the indictment has been amended and a new grand jury has to be convened? When the basic theory of an indictment changes, then this court has that yes, a grand jury does have to be reconvened. Do you have any case that equates dismissing counts of an indictment with amending an indictment? Not before me, Your Honor. We've been operating this Republic for well over 200 years. The absence of a single case in the history of the Republic does suggest that there might be a material difference between amending an indictment and dismissing counts of one. Your Honor, we have seen cases where the government does go back to the grand jury when it decides to dismiss counts, and they should have done this in this case, especially given the fact that they were dismissing 76% of the indictments. They also indicated their awareness that it is problematic to change too much of what a grand jury has found. When they ended up deciding to renumber the counts, they did so on the first day of trial, and the government lawyer noted, I'm just maybe hesitant to change too much of what a grand jury has found. They were aware that there are problems with doing that. With renumbering? If the government was concerned about the renumbering and that potentially being problematic, they should have been concerned about changing. Well, how does the numerical order of counts reflect what the grand jury did or didn't do? I mean, that's a concern to the grand jury. I would agree with that, Your Honor. I think it's the substantive change that was more problematic, and which is what we required. Thank you very much. And Professor Shrupp, the court appreciates the willingness of the legal clinic to accept the appointment in this case and your assistance to the court as well as your client. The case is taken under advice.